IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,457

STATE OF KANSAS,
*Appellee*,

v.

KURT POWELL,
*Appellant.*

SYLLABUS BY THE COURT

1.

Except for a first time conviction, Jessica's Law requires a hard 25 life sentence for a defendant who is 18 years of age or older and convicted of the statutorily enumerated crime, which includes sex offenses.

2.

For a first time Jessica's Law conviction, K.S.A. 2017 Supp. 21-6627(d)(1) provides discretion to sentence a defendant under the Kansas Sentencing Guidelines Act if "the [sentencing] judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose departure."

3.

An appellate court reviews for abuse of discretion a district court's determination under K.S.A. 2017 Supp. 21-6627(d)(1) as to whether a defendant's mitigating circumstances are substantial and compelling reasons to depart from a hard 25 life sentence under Jessica's Law.

4.

A sentencing judge abuses discretion in deciding whether a defendant's mitigating circumstances are substantial and compelling reasons to depart under K.S.A. 2017 Supp. 21-6627(d)(1) when: (i) a ruling is based on an error of law; (ii) a ruling is based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based; or (iii) is arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the judge.

5.

A party arguing an abuse of discretion bears the burden of proving it occurred.

6.

K.S.A. 2017 Supp. 21-6627(d) requires a sentencing judge to state on the record at the time of sentencing the substantial and compelling reasons for departure when departing from the mandatory minimum term of imprisonment under Jessica's Law. The statute does not require the sentencing judge to explain a decision denying departure.

7.

A sentencing judge is not required to affirmatively state the judge did not weigh aggravating and mitigating circumstances when denying departure under K.S.A. 2017 Supp. 21-6627(d)(1).

8.

A sentencing judge deciding whether there are substantial and compelling reasons to depart from Jessica's Law's hard 25 life sentence may consider evidence that might reasonably bear on the proper sentence for a particular defendant.

2

9.

On review, an appellate court should disregard characterizations of evidence that might reasonably bear on a defendant's sentence for a first time Jessica's Law conviction as "aggravating." The question is whether the evidence relates to the decision to be made, i.e., whether the mitigating circumstances advanced both exist and supply a substantial and compelling reason to depart from the hard 25 life sentence.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 758, 393 P.3d 174 (2017). Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed August 24, 2018. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: The State challenges a Court of Appeals decision reversing a district court's denial of a request for downward departure from the hard 25 life sentence under Jessica's Law. A divided panel held the sentence must be vacated and reconsidered because the record was ambiguous as to whether the district court weighed evidence about an uncharged prior molestation against defendant's evidence in mitigation. *State v. Powell*, 53 Kan. App. 2d 758, 762, 393 P.3d 174 (2017). We disagree with the panel majority's rationale and reverse its decision because we discern no abuse of discretion. We affirm the district court's denial of the requested downward departure. In so holding,

3

we seek to clarify the process for district court consideration of motions to depart under Jessica's Law.

FACTUAL AND PROCEDURAL BACKGROUND

Kurt Powell pleaded guilty to one count of aggravated indecent liberties with a child under 14. At the plea hearing, he admitted inappropriately touching the victim, with intent to arouse or satisfy sexual desires, when she was under 14 years old and he was over 18. The crime occurred between February and November 2013. The district court accepted the plea and found Powell guilty. The conviction carried a hard 25 life sentence under Jessica's Law, K.S.A. 2017 Supp. 21-6627. K.S.A. 2017 Supp. 21-5506(b)(3)(A); K.S.A. 2017 Supp. 21-6627(a)(1).

At sentencing, Powell requested a downward durational departure to 29.5 months' imprisonment. For this to happen, the district court would have needed to make a double departure: once from the life sentence to the sentencing grid; and again from the applicable grid box to the requested term. To support this leniency, Powell relied on his lack of criminal history, his willingness to participate in available rehabilitation, his work history, his supportive family, and the fact he was truthful with police during the criminal investigation. Powell argued his victim, who was his daughter, had forgiven him; and he noted his family favored departure. Powell submitted an evaluation by Dr. Robert Barnett, a clinical psychologist. An acquaintance, Mark Berg, also testified for Powell.

Barnett's report is not in the appellate record, but he testified Powell was a good candidate for departure based on statistical data about reoffense rates. He said Powell's chances for successful rehabilitation were enhanced by his work history, his supportive family, the lack of substance abuse problems, and the lack of a criminal history. Barnett said Powell had the necessary insight to understand his actions' consequences and to learn

4

from them. Barnett said Powell was not a pedophile because he was not a compulsive child molester and noted the victim was past puberty. Barnett believed Powell would benefit from sex offender treatment offered by the Department of Corrections and could get further helpful assistance on parole or probation. Barnett summed up his conclusions by stating: "I'm not quite sure how he could be a better candidate [for departure]."

On cross-examination, Barnett admitted he received his information only from Powell and his attorney. He explained he always asks offenders if they intend to reoffend. When questioned whether a history of molesting another child would cause Barnett to doubt his conclusion about Powell reoffending, Barnett said, "I understand there have been allegations in the past with Mr. Powell, but I don't think he was arrested or convicted of anything else." The State asked Barnett, "In the affidavit it says that he admitted to molesting his older stepdaughter. Did you remember that?" Barnett said he did not, was not sure what the prosecutor was referring to, and questioned whether the State was referring to an affidavit in this case or some other one. The prosecutor clarified she was referring to an affidavit in this case. Barnett acknowledged he missed that detail. He agreed such an admission would be "a big thing" but would not change his opinion. We note the probable cause affidavit in this case does not reference another victim, so based on the appellate record we are unsure what affidavit the prosecutor was discussing, or if it even exists.

When questioned about Powell's present crimes, Barnett said he understood it was over-the-clothes fondling that happened more than one time. He said Powell did not tell him about confessing to touching his stepchild's genitals. Barnett said he needed more information about that to determine whether this would change his assessment and agreed there was clinical significance in the difference between the stepchild's allegations and over-the-clothes fondling. He said these details would not change his overall opinion on the likelihood of reoffending because sex offenders have a low recidivism rate.

5

Later, while cross-examining Barnett about whether Powell was a pedophile, the State asked, "He told you that he didn't actually molest his older stepdaughter. You took him at his word, didn't you?" Barnett said he did not ask about this, but said he

"asked [Powell] if he had any history of accusations of sexual behavior. He said he was accused of touching his stepdaughter. No charges were brought. He added my first wife in 1998 accused me of molesting her daughter, but she just wanted me gone. That's the extent of it."

Barnett said Powell told him he felt his attorney did not want him to talk about this.

Powell's stepdaughter, M.L., testified for the State that Powell molested her until she was 12 years old. She said this included touching her breasts and vagina, attempting intercourse, making her touch his penis, and making her put his penis in her mouth. She did not remember when this abuse started. She "just grew up with it. It was just there." She said the abuse stopped when she found out it was wrong and told Powell to stop. She said he never apologized and continued making sexual comments to her after she was an adult. She believed Powell would reoffend because he abused her almost every night and did it again with the victim in this case.

Berg was acquainted with Powell through church. He asked the court for leniency. He believed Powell wanted help and wanted to change. On cross-examination, Berg testified he did not know until the sentencing hearing that Powell molested M.L.

*The district court's order denying downward departure*

The district court denied Powell's motion and imposed the hard 25 life sentence. The court's explanation, which is central to this appeal, stated:

"With regard to the motion for departure, that motion lists essentially five reasons that they desire—or pardon me, that the defendant is asking the Court for a departure. First is a lack of criminal history. Second is the availability of rehabilitation efforts, and third is Mr. Powell's willingness to participate in those rehabilitative efforts. Fourth is his impressive work history and supportive family, and finally, that he was truthful with police from the beginning of this investigation.

"I will point out that it's probably obvious to everyone in the courtroom that this case has a presumed sentence, and what it means for the sentencing judge is that that is a sentence that the Court is to hand down. That's what the law says. Obviously the motion was filed in an effort to persuade the Court not to impose that sentence. In order for the Court to grant that motion, I must find that there are substantial and compelling reasons to do so.

"Let's look a little bit at those definitions. I will quote from *State v. McKay*. It is 271 Kansas 725, 2001 case from the Supreme Court of Kansas. It says first in the context of departure sentences, the terms substantial and compelling have specific definitions. The term substantial refers to something that is real, not imagined, something with substance, not ephemeral.

"The term compelling means that the Court is forced by the facts of the case to go beyond what status quo is, go beyond what is the statutory sentence. State versus Zuck, Z-U-C-K, 21 Kansas Appellate 597, a 1959 case states that as these definitions reflect, departure sentences are authorized only in extraordinary cases.

"I rely on those definitions and in doing so, would repeat that the motion for departure needs to be supported by that type of information. *After considering all of the*

7

*information presented today, the Court cannot find substantial and compelling reasons to*
*depart from the presumed sentence. The presumed sentence in my opinion is just in this*
*case.*

"I find the primary offense is Count 1 calling for a prison term of a life and post-supervision duration of life. I would repeat again that the motion for departure is denied as the Court cannot find substantial and compelling reasons to grant the motion.

"It is the judgment and order of this Court that you be sentenced as follows: With regard to Count 1, aggravated indecent liberties with a child less than 14 years of age, life imprisonment. Total term of incarceration will be life." (Emphasis added.)

Powell timely appealed. See K.S.A. 2017 Supp. 22-3608(c) (providing defendant may appeal within 14 days of district court judgment). He argued the district court abused its discretion when denying his departure motion by not following the required analytical framework set out in *State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015). He stressed two deficiencies: (1) failing to determine if mitigating circumstances existed; and (2) including aggravating circumstances and "inappropriate facts" in its analysis because the court said it "considered all of the information presented today."

*The panel decision reversing the district court*

A divided panel reversed the district court. The majority vacated the sentence and remanded for the district court to reconsider Powell's motion under what the majority perceived was the *Jolly* framework. *Powell*, 53 Kan. App. 2d at 762. Judge Thomas J. Malone dissented, arguing *Jolly* is analytically unsound, but noting the district court's decision complied all the same. 53 Kan. App. 2d at 770-71 (Malone, J., dissenting) (citing *State v. McCormick*, 305 Kan. 43, 378 P.3d 543 [2016] [Stegall, J., dissenting]).

In reversing, the majority did not squarely resolve Powell's argument that the district court should not have considered evidence about M.L.'s uncharged abuse. Instead, the majority characterized her testimony as an "aggravating" factor because it was unrelated to the crime for which Powell was being sentenced. 53 Kan. App. 2d at 762 (noting M.L.'s testimony was "presented solely as an aggravating factor intended to offset the mitigating factors"). Importantly, the majority said it could not "definitively determine from the record whether the sentencing court considered Powell's claimed mitigating circumstances *without weighing them against the State's aggravating circumstances*." (Emphasis added.) 53 Kan. App. 2d at 762. The majority essentially held resentencing was necessary to affirmatively demonstrate compliance with *Jolly*. 53 Kan. App. 2d at 762.

Disagreeing with the panel majority, Judge Malone argued against the result. He believed the record showed compliance with *Jolly*, noting the court first reviewed the mitigating circumstances advanced by defendant and then determined there were not substantial and compelling reasons to depart after considering all the facts. 53 Kan. App. 2d at 770. Judge Malone viewed M.L.'s abuse not as an aggravating circumstance but as rebutting Barnett's expert testimony. 53 Kan. App. 2d at 767-68. He stated it was appropriate for the sentencing court to consider evidence about the stepdaughter's abuse because it might reasonably bear on the appropriate sentence. 53 Kan. App. 2d at 770.

Judge Malone urged this court to grant review and "take the opportunity to further clarify how sentencing courts should conduct hearings on departure motions under Jessica's Law, what evidence can be presented by the State at such hearings, and how sentencing courts should consider the evidence in ruling on such motions." 53 Kan. App. 2d at 771.

The State petitioned this court for review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Our basic inquiry is whether the district court's sentencing order must be reversed simply because the court did not affirmatively declare that it reviewed Powell's mitigating circumstances without weighing them against aggravating circumstances. This is clear from the panel majority's holding that

> "because we cannot definitely determine from the record whether the sentencing court considered Powell's claimed mitigating circumstances without weighing them against the State's aggravating circumstances, we find it necessary to vacate Powell's sentence and remand for resentencing and for reconsideration of Powell's departure motion and, in reconsidering Powell's motion, to demonstrate compliance with *Jolly*." 53 Kan. App. 2d at 762.

We divide our review into two parts. First, whether the sentencing court's failure to expressly state how it applied the *Jolly* framework is sufficient reason to require the district court to reconsider the departure motion. Second, whether the district court's consideration of Powell's prior, uncharged child sex crimes would establish the district court abused its discretion by considering facts immaterial to its determinations about whether there were substantial and compelling reasons for departure under K.S.A. 2017 Supp. 21-6627(d)(1).

*Standard of review*

Jessica's Law requires a hard 25 life sentence for a defendant who is 18 years of age or older and convicted of the statutorily enumerated crime, which includes sex offenses. K.S.A. 2017 Supp. 21-6627(a)(1). But for a first time Jessica's Law conviction, a defendant may be sentenced under the Kansas Sentencing Guidelines Act if "the [sentencing] judge *finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure*." (Emphasis added.) K.S.A. 2017 Supp. 21-6627(d)(1). If the district court finds substantial and compelling reasons to depart, the defendant may be sentenced to the otherwise applicable term of months on the grid instead of an indeterminate life sentence. See K.S.A. 2017 Supp. 21-6804.

An appellate court reviews a district court's determination as to whether there are substantial and compelling reasons to depart for abuse of discretion. *Jolly*, 301 Kan. at 325. A district court abuses its discretion when: (1) a ruling is based on an error of law; (2) a ruling is based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based; or (3) a ruling is arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the judge. 301 Kan. at 324.

> "Generally, the trial court's decision is protected if reasonable persons could differ upon the propriety of the decision as long as [it] is made within and takes into account the applicable legal standards. *However, an abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards*." (Emphasis added.) *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007).

11

*The* Jolly *Framework*

In Powell's case, we focus on the panel majority's determination that the district court abused its discretion by making an error of law. See *Powell*, 53 Kan. App. 2d at 762 ("Failure to follow the statutory method for considering a departure from a Jessica's Law case is an error of law and constitutes an abuse of discretion."). Much of the panel's back-and-forth with the dissent centers on our court's decision in *Jolly* and a later case, *McCormick*, 305 Kan. 43. We need to review both decisions to explain our outcome in Powell's appeal.

The *Jolly* court concluded that when considering a departure motion under Jessica's Law, K.S.A. 21-4643's "plain language . . . instructs the sentencing court to conduct a review of the mitigating circumstances *without balancing them against the aggravating ones*." (Emphasis added.) *Jolly*, 301 Kan. at 322. The court explained:

> "'On structure, no balance between mitigators and aggravators such as that implied in K.S.A. 21-4716 or explicitly provided for in K.S.A. 21-4624(e) or K.S.A. 21-4635(b)-(d) is necessary when Jessica's Law is the starting point. The only way for Jessica's Law to operate is to intensify, if not lengthen, a sentence. It makes 25 years a mandatory minimum, unless certain mitigators justify a departure. Simply put, there is nowhere to go but to a less-intense place.'" 301 Kan. at 322 (quoting *State v. Spencer*, 291 Kan. 796, 809, 248 P.3d 256 [2011]).

Accordingly, the *Jolly* court "disapprove[d] of any language in [Kansas] caselaw *that would indicate aggravating circumstances can be weighed against mitigating circumstances when considering departure*." (Emphasis added.) 301 Kan. at 322. For the *Jolly* court, this meant that when considering a departure motion, the district court's decision-making framework requires it to first

12

"review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence. Finally, if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the district court must state on the record those substantial and compelling reasons." 301 Kan. at 324.

The *Jolly* decision arose from a Court of Appeals reversal of a departure sentence. To get to its result, the panel reassessed what the sentencing court relied on, discounting each factor's significance and then reweighing the evidence. And based on its reassessment, the panel determined the sentencing court abused its discretion in granting departure. 301 Kan. at 328. The *Jolly* panel added,

"[*W*]*e find that the aggravating factors in this case clearly outweigh Jolly's lack of a criminal record.* He was a 43-year-old male who assumed the role of a lover with a 12-year-old girl. He was a trusted adult family friend; she was a child. He knew of C.E.'s sexual abuse by her mother's boyfriend 1 month earlier and he took advantage of her vulnerability.

"There were no substantial and compelling reasons for granting a departure sentence." (Emphasis added.) *State v. Jolly*, No. 106,680, 2012 WL 5519179, at *7 (Kan. App. 2012).

On review, the *Jolly* court rejected the panel's reasoning and affirmed the departure sentence. The *Jolly* court first determined substantial competent evidence supported each mitigating factor. It then concluded,

"The district court thus made no error in fact or law in its analysis. Essentially, the State's contention is that due to the facts of this case no reasonable person would grant Jolly a departure. Although other reasonable persons may not have granted the

13

departure, we find that a reasonable person could agree with the district judge's determination that a departure was warranted." 301 Kan. at 331.

In *McCormick*, the district court discussed the defendant's mitigating evidence and then stated, "'The problem is *there's an aggravating factor here*,'" referring to the fact that the 13-year-old rape victim was intoxicated during the crime. (Emphasis added.) *McCormick*, 305 Kan. at 46. The district court followed this up by explaining:

"'[E]ven though there are some substantial mitigating factors, *I think it's just trumped by the . . . evidence* that this particular [13-year-old] was severely inebriated to the point where she couldn't . . . give consent. So I haven't heard anything that makes me think I should go ahead and . . . find substantial and compelling reasons for departure . . . .'" (Emphasis added.) 305 Kan. at 46.

A court majority held this explanation showed the district court applied the wrong legal standard by improperly weighing aggravating and mitigating factors when it "explicitly referred to the piece of evidence that persuaded him as an 'aggravating factor' . . . ." 305 Kan. at 50.

Justice Caleb Stegall dissented, joined by Justices Marla Luckert and Eric Rosen. Justice Stegall argued *Jolly* and the *McCormick* majority improperly added a prohibition against weighing aggravating factors into K.S.A. 2012 Supp. 21-6627(d)(1)'s language. He noted the statute neither commands nor prohibits a weighing of aggravating and mitigating circumstances and that the statute's "plain, unambiguous language . . . merely tells the district court judge to determine whether substantial and compelling reasons exist to grant a downward departure after reviewing the mitigating circumstances." 305 Kan. at 52 (Stegall, J., dissenting). He also argued the majority put form over substance by acknowledging a sentencing court may consider how the crime was committed and the circumstances inherent in it, but nevertheless find reversible error when the district court

14

did that solely because the lower court "used the 'wrong' words to describe what [it] did." 305 Kan. at 53.

Judge Malone echoed those concerns in his dissent in Powell's case, noting the *Jolly* court's direction that sentencing courts not weigh aggravating circumstances against mitigators "is difficult to follow in real-life cases." *Powell*, 53 Kan. App. 2d at 769. He explained:

"Powell's case provides a good example. Is the State allowed to present evidence at the departure hearing to rebut the defendant's evidence? If so, must the evidence presented by the State be limited strictly to the manner in which the defendant carried out the crime? How is the district court to consider the evidence presented by both parties in deciding the departure motion? In almost every hearing under the criminal code, parties are allowed to present conflicting evidence so the court will have all the relevant information to make an informed decision. Are we saying that departure hearings under Jessica's Law do not work this way?" 53 Kan. App. 2d at 769.

Both *Jolly* and *McCormick* contain language that has resulted in mixed outcomes and conflicting reasoning in later Court of Appeals cases reviewing decisions denying Jessica's Law departures. Most of this comes from:  (1) *Jolly*'s stated prohibition against weighing aggravating and mitigating circumstances, while sanctioning consideration of "the facts of the case," *Jolly*, 301 Kan. at 323-24; and (2) the *McCormick* court's concern that the district court applied the wrong standard, noting "where, as here, the district judge explicitly referred to the piece of evidence that persuaded him as an 'aggravating factor,' we cannot be wholly confident that the statutory command not to conduct weighing of aggravators and mitigators was followed," while allowing consideration of the "circumstances inherent in the crime." 305 Kan. at 50-51.

15

In dutifully trying to follow *Jolly* and *McCormick*, various Court of Appeals panels have discovered reversible error in cases that fall into three general categories. And yet another batch of cases find no error.

The first is the *McCormick*-type case, in which the sentencing court expressly referred to aggravating factors when ruling. See, e.g., *State v. Henning*, No. 115,832, 2017 WL 3837224, at *12 (Kan. App. 2017) (unpublished opinion) ("The district court specifically considered the video tape, the State's primary piece of evidence, to be an 'aggravating' circumstance causing the scale to have 'dropped like a rock.'").

The second category includes cases in which sentencing courts described their rulings as products of a weighing process but without referring to the facts—against which mitigating factors were balanced—specifically as aggravating circumstances. See, e.g., *State v. Atkisson*, No. 112,656, 2015 WL 6457797, at *1 (Kan. App. 2015) (unpublished opinion) (noting sentencing court weighed mitigating factors "'against the other items'"—i.e., "the facts that related charges occurred in multiple counties, this was not an isolated incident, and the age difference" between defendant and victim); *State v. Berriozabal*, No. 108,303, 2014 WL 1707417, at *15 (Kan. App. 2014) (unpublished opinion) (district court noted mitigation present from defendant's young age and insubstantial criminal history was "outweighed" by offenses' violent nature, repeated abuse, abuse of position of authority, failure to stop when asked, and fleeing county when caught; but it did not explicitly call these facts aggravating circumstances) *vacated in part and remanded* (Kan. S. Ct. order dated May 4, 2015) (unpublished).

The third includes cases like Powell's in which the district court did not refer to either "aggravating circumstances" or "weighing," but the record failed to affirmatively show the court followed *Jolly*. See, e.g., *State v. Anno*, No. 116,350, 2017 WL 3947380, at *6 (Kan. App. 2017) (unpublished opinion) (holding district court abused its discretion

16

because "[t]here [was] no point in the record at which the district court first considered the mitigating circumstances without any attempt to weigh them against aggravating factors"); *State v. Sullivan*, No. 114,369, 2016 WL 4413563, at \*2-3 (Kan. App. 2016) (unpublished opinion) (vacating sentence for failing to follow *Jolly* framework when "district court made only very brief comments" and "gave no indication that it carried out the first step mandated by *Jolly*"); *State v. Pulley*, No. 112,631, 2015 WL 5750477, at \*5 (Kan. App. 2015) (unpublished opinion) ("It seems from the record that the district court improperly considered aggravating circumstances, contrary to *Jolly*. At best, the record is ambiguous as to when the district court completed its determination as to the existence of mitigating factors."); *State v. Albanil-Alvarado*, No. 111,802, 2015 WL 5311922, at \*2 (Kan. App. 2015) (unpublished opinion) (vacating sentence because record was insufficient for Court of Appeals to recognize if district court had followed *Jolly*'s procedural steps; noting the district court said it had reviewed mitigating circumstances, but it seemed to have immediately moved on to consider other facts that were not presented as mitigators).

In contrast with the third category, several Court of Appeals cases have upheld district court decisions denying departure even when the sentencing court did not expressly perform each *Jolly* step on the record. See, e.g., *State v. Cessna*, No. 115,999, 2018 WL 386844, at \*7 (Kan. App. 2018) (unpublished opinion) (holding district court did not abuse discretion when it "simply said, 'I do not find substantial and compelling reasons to depart'" without affirmatively showing it followed *Jolly*); *State v. Ashbaugh*, No. 116,426, 2017 WL 5180845, at \*4 (Kan. App. 2017) (unpublished opinion) (upholding district court's denial of defendant's departure motion when it ruled there were no substantial and compelling reasons to depart and noted victim impact statements showed damage defendant had caused to victims and their family; stating district court's "straightforward ruling gave no indication he had improperly considered or 'weighed' any 'aggravating circumstances'"); *State v. Cook*, No. 113,768, 2016 WL 2609640, at \*2-3

17

(Kan. App. 2016) (unpublished opinion) (holding no abuse of discretion when district court simply ruled substantial and compelling reasons to depart did not exist and noted—after observing no need to find aggravating circumstances—that defendant and victims' ages supported denying departure).

Given this assortment, it seems obvious *Jolly* and *McCormick* fail to chart a discernible path for our sentencing and reviewing courts to consistently follow when considering departure motions under Jessica's Law. We need to change that.

*Failure to perform* Jolly *steps on the record is not reversible error*

Turning to our first inquiry—whether the *Jolly* steps must be performed on the record—we agree with the State that the *Powell* majority erred when concluding reversal was required because the district court did not affirmatively disavow it was not weighing mitigating and aggravating circumstances. Powell's sentencing court did not expressly state it considered any facts as "aggravating," and it did not describe its process in reaching its ruling as "weighing."  But the panel majority nevertheless stated it could not "*definitively determine from the record* whether the sentencing court considered Powell's claimed mitigating circumstances without weighing them against the State's aggravating circumstances." (Emphasis added.) *Powell*, 53 Kan. App. 2d at 762. It held resentencing was required so the district court could show its compliance with *Jolly.* We disagree with the panel majority for two reasons.

First, the statute does not oblige a district court to state its reasons for denying a departure motion. Indeed, K.S.A. 2017 Supp. 21-6627(d)(1) requires just the opposite: "*If the sentencing judge departs* from [the] mandatory minimum term of imprisonment, *the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure.*" (Emphases added.) And while it is laudable for

district courts to explain the reasons for their rulings, those explanations are voluntary and have injected opportunity for challenge based on our language from *Jolly* and *McCormick*.

The *Powell* panel majority cited *Pulley*, 2015 WL 5750477, for its understanding that ambiguity required reversal. *Powell*, 53 Kan. App. 2d at 762. In *Pulley*, the panel remanded for resentencing when the district court denied departure after considering evidence the defendant's crimes involved more than incidental contact with the victim and occurred over a larger time period than suggested by the factual basis for defendant's guilty plea to a single crime. *Pulley*, 2015 WL 5750477, at *5-6. As part of its rationale for reversal, the *Pulley* panel commented,

> "It seems from the record that the district court improperly considered aggravating circumstances, contrary to *Jolly*. *At best, the record is ambiguous as to when the district court completed its determination as to the existence of mitigating factors.* Although the State argues that the district court was simply considering mitigating factors in light of the facts of the case, we note that Pulley's prior diversion for a sex offense was not a fact inherent in the crime of conviction and appeared to have been viewed negatively by the district court. *Because of the ambiguity in the record, we cannot tell whether Pulley's diversion was considered in the context of determining whether the mitigating factor in K.S.A. 21-4643(d)(1) was met, or if the district court viewed the diversion as an aggravating factor.*" (Emphases added.) *Pulley*, 2015 WL 5750477, at *5.

But our pre-*Jolly* caselaw noted that "'[s]pecificity by the district court judge when making his or her determination is not statutorily required' *unless the court decides departure is warranted*." (Emphasis added.) *State v. Harsh*, 293 Kan. 585, 587, 265 P.3d 1161 (2011) (quoting *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 [2010]); see also *State v. Remmert*, 298 Kan. 621, 631, 316 P.3d 154 (2014) ("Jessica's Law does not require a district court to state the reasons why it denied a departure motion."),

19

*disapproved of on other grounds by Jolly*, 301 Kan. at 322 ("[W]e disapprove of any language in our caselaw that would indicate aggravating circumstances can be weighed against mitigating circumstances when considering a departure in a Jessica's Law sentencing. See, e.g., *Remmert*, 298 Kan. at 630."); *State v. Florentin*, 297 Kan. 594, 601-02, 303 P.3d 263 (2013) ("[A] judge is not required to state the reasons a departure motion is denied."), *disapproved of on other grounds by Jolly*, 301 Kan. at 322. *Jolly* does not purport to disturb this understanding.

Second, the cases finding abuse of discretion based on the record's failure to affirmatively disclose the district court's application of the *Jolly* framework are oddly contrary to how abuse of discretion review is typically performed—namely, the general rule that a party arguing an abuse of discretion bears the burden of proving it. See, e.g., *State v. Staten*, 304 Kan. 957, 970, 377 P.3d 427 (2016) (defendant bears burden of proving abuse of discretion denying motion for new counsel); *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *disapproved on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017); *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015); *State v. Hilt*, 299 Kan. 176, 186, 191, 322 P.3d 367 (2014); *State v. Plotner*, 290 Kan. 774, 777, 235 P.3d 417 (2010); *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009); *State v. Reid*, 286 Kan. 494, 519, 186 P.3d 713 (2008). And the same general rule applies to discretionary sentencing decisions including denying a motion to depart from Jessica's Law's hard 25 life sentence. *State v. Seward*, 289 Kan. 715, 722, 217 P.3d 443 (2009) (holding defendant had the burden to demonstrate district court abused its discretion in denying a departure motion), *disapproved on other grounds by Jolly*, 301 Kan. at 322-23; see also *State v. Baker*, 297 Kan. 482, 484, 301 P.3d 706 (2013) (defendant bore burden of proving abuse of discretion in district court's order that sentences would run consecutively, rather than concurrently); *State v. Sampsel*, 268 Kan. 264, 271-72, 997 P.2d 664 (2000) (noting under pre-KSGA sentencing scheme burden on

party making claim to demonstrate departure sentence was product of partiality, prejudice, or improper motive and scope of appellate review is abuse of discretion).

Similarly, in other contexts, a district court's failure to express each step of an applicable legal framework on the record has not required reversal for clarification. For example, district court discretion in motions for mistrial and motions to withdraw pleas is guided by legal frameworks like the one announced in *Jolly*. See *Warren*, 302 Kan. at 608 (holding district court evaluating motion for mistrial must first decide whether prejudicial conduct created fundamental failure in proceeding; and, if so, whether it is possible to proceed without denying fair trial). Again, nothing in *Jolly* altered the general principles underlying abuse of discretion review.

In sentencing Powell, the district court did not recite each step set forth in *Jolly*, although it articulated the mitigating circumstances Powell advanced. The district court did not make findings whether Powell proved his mitigators, but this is not enough standing alone to conclude the court abused its discretion. The district court identified the correct legal standard, i.e., whether substantial and compelling reasons to depart existed. And it gave no indication it was engaging in "weighing" or even that it considered any information presented to it as "aggravating."

As Judge Malone correctly pointed out in dissent:

"Was the State not entitled to rebut the evidence that Powell had presented at the hearing to support his departure motion? Of course, it was. And if the State was allowed to present rebuttal evidence, was the district court not allowed to consider the evidence in deciding the motion? Of course, it was. In ruling on Powell's departure motion, the district court expressly recited the mitigating factors set forth in the motion. The district court did not refer to the State's rebuttal evidence as 'aggravating circumstances'; in fact, the district court never used this term at the hearing. The district court never stated that it

21

had weighed aggravating circumstances against mitigating circumstances in denying Powell's motion. Instead, the district court merely stated that '[a]fter considering all of the information presented' at the hearing, it was unable to find substantial and compelling reasons to depart from the presumed sentence." *Powell*, 53 Kan. App. 2d at 767-68.

Put simply, since reversal of a denial of a departure motion requires an abuse of discretion, and because the party alleging abuse of that discretion must demonstrate it, the only question on appeal is whether something in the record shows an abuse occurred. We address this question as to Powell's appeal in the next section.

To be clear, we hold the panel majority erred when it reversed and remanded Powell's sentence because the district court did not affirmatively explain it was not weighing mitigating and aggravating circumstances when denying Powell's request for a Jessica's Law departure. Any precedent expressing a contrary view is in error.

*The district court did not abuse its discretion*

We now turn to our second inquiry—whether the record demonstrates an abuse of discretion. The panel majority's reasoning suggests the district court's reliance on evidence that would constitute "aggravating circumstances" might demonstrate abuse of discretion. *Powell*, 53 Kan. App. 2d at 762. And the panel majority characterized Powell's uncharged abuse of M.L., as shown by her testimony and other evidence, as an aggravating circumstance. 53 Kan. App. 2d at 761-62. But this characterization falls victim to Justice Stegall's form-over-substance critique. *McCormick*, 305 Kan. at 53. The real question is whether the district court considered improper evidence in denying the departure motion, regardless of any label or characterization one might give that evidence.

22

The *McCormick* majority indicated that whether a fact is beyond the district court's reach in a departure ruling is a question of law that turns on interpreting K.S.A. 2017 Supp. 21-6627(d)(1). 305 Kan. at 48 (argument sentencing court erred by considering a self-described aggravating factor when ruling on departure motion requires the court to conduct statutory interpretation). But as discussed, K.S.A. 2017 Supp. 21-6627(d)(1) simply provides "the sentencing judge shall impose the mandatory minimum term of imprisonment . . . unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." This statutory language fits neatly within the abuse of discretion paradigm.

If the court based its ruling on information it was not entitled to consider as a matter of law, it abused its discretion by basing its ruling on an error of law. See *Kuhn v. Sandoz Paraceuticals Corp.*, 270 Kan. 443, 456, 14 P.3d 1170 (2000) (noting questions of law presented when appellate court seeks to review the factors and considerations forming a discretionary decision, and stating "'[a] district court by definition abuses its discretion when it makes an error of law'"). Again, the issue is simply whether it was an abuse of discretion for the sentencing court to consider "all of the information presented today" as the district court explained. We identify no error.

There are three reasons the district court could properly consider the prior-sex-crime evidence in ruling on the departure motion: (1) it was a "fact of the case" for the substantial and compelling reason determination because it showed the convicted crime was not an isolated incident, but rather part of Powell serially molesting children in his household; (2) it was relevant to whether Powell proved his claimed mitigating circumstances—in particular, his lack of criminal history and the likelihood he would not reoffend; and (3) it was introduced by the State for the court's use in deciding the motion and Powell failed to contemporaneously object to it, so he cannot now claim the evidence's introduction as a basis for reversal under K.S.A. 60-404.

23

Powell argues the evidence was not a fact of the case because it did more than just demonstrate his likelihood of reoffending and went so far beyond mere rebuttal that it amounted to raising an aggravating circumstance. But what does that mean and how could a court gauge when evidence crosses over into this perceived forbidden territory? Powell offers no explanatory case authority to support his claim. Instead, he seems to contend the State was to be strictly constrained in cross-examining Barnett and limited to arguing Powell failed to prove his mitigating factor. For its part, the panel majority characterized this uncharged prior crimes evidence as an aggravating factor because it deemed the evidence unrelated to how Powell committed the crime of conviction. *Powell*, 53 Kan. App. 2d at 762. But this labeling does not accurately capture the distinction between permissible and impermissible considerations in ruling on a departure motion or supply the answer to the question posed.

Powell's prior crimes with M.L. were material to the district court's decision whether to depart because they demonstrated how Powell carried out the convicted offense. As explained in *Jolly*, after reviewing the mitigating circumstances, when a district court is deciding a departure motion, it considers "[t]he facts of the case, . . . [and] determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence." *Jolly*, 301 Kan. at 324. Something is "'"substantial"'" if it is "'"real, not imagined; something with substance and not ephemeral," while the term "'compelling' implies that the court is forced, *by the facts of a case*, to leave the status quo or go beyond what is ordinary."'" 301 Kan. at 323. *Jolly* does not explicitly define what constitute "the facts of the case" when a district court is considering whether the mitigating circumstances amount to substantial and compelling reasons to depart, but it broadly instructs:

"While [Jessica's Law] does not allow a weighing of aggravating factors against mitigating factors, the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum. *The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant*, *given the crime committed, including the manner or way in which an offender carried out the crime*. This includes those 'circumstances inherent in the crime and the prescribed sentence.' [Citation omitted.] Provided the sentence imposed is within the statutory limits, '"[i]t is the sentencing judge alone who determines the appropriate sentence to be imposed or other disposition of the case by exercising his or her best judgment, common sense, and judicial discretion *after considering all of the reports, the defendant's background, the facts of the case, and the public safety*."'" (Emphasis added.) 301 Kan. at 323-24.

Moreover, the *McCormick* court reasoned that "[t]he manner in which a crime is committed and the circumstances inherent in the crime *are not inevitably limited to the strict legal elements of the offense*." (Emphasis added.) *McCormick*, 305 Kan. at 50. This suggests *Jolly* does not limit the type of evidence a district court may consider in determining whether departure is warranted, but only limits the manner in which the district court makes its decision. See 305 Kan. at 50-51 (rejecting argument that district court erred by considering Jessica's Law victim's intoxication in addressing departure motion because court may consider only strict legal elements of offense); 305 Kan. at 53 (Stegall, J., dissenting) (arguing *Jolly* framework "is in actuality just a command to the district court judge not to describe what he or she is doing—*viz.*, considering all of the circumstances—as 'weighing'"). *McCormick* also suggests the so-called "aggravating" circumstance in that case, i.e., the victim's intoxication, would have been a proper consideration had the court not used it as a fact to weigh against the defendant's mitigating circumstances. 305 Kan. at 50.

25

But these intellectual contortions just add credence to Judge Malone's observation that the *Jolly* court's direction that sentencing courts not weigh aggravating circumstances against mitigators "is difficult to follow in real-life cases." *Powell*, 53 Kan. App. 2d at 769. In other words, an "aggravating" label or characterization should not control when reviewing departure decisions in Jessica's Law case for abuse of discretion. The real question becomes whether the evidence bears on the decision to be made, i.e., whether the mitigating circumstances advanced both exist and supply a substantial and compelling reason to depart from the hard 25 life sentence. Cf. *State v. Thurber*, 308 Kan. ___, 420 P.3d 389 (2018) (noting for purposes of determining relevance, evidence is material if it tends to establish a fact that is both at issue and significant under the case's substantive law).

Powell's prior crimes were material to the district court's ruling because they constituted information that might reasonably bear on the proper sentence. This is so because it reflected on Powell's background, public safety, and even the facts of the case. This context surely helped the court determine whether, in light of Powell's mitigation case, it was "'forced . . . to leave the status quo or go beyond what is ordinary.'" 301 Kan. at 323. For this reason, we are not persuaded by Powell's contention that the district court consulted facts unrelated to the case when it considered information outside his plea agreement.

Powell relies on *Pulley* to press his point, but the *Pulley* panel concluded the district court abused its discretion in denying departure in part because a court may not "consider facts that are merely alleged in connection with a charge that is ultimately dismissed. Those facts have not been established either by admission or by trial." *Pulley*, 2015 WL 5750477, at *6. That situation arose because Pulley pleaded guilty to one crime in exchange for the State dismissing another count, but at sentencing the court denied departure citing allegations in the probable cause affidavit concerning the dismissed

26

count. See *State v. Atkisson*, [this day decided] ("When discretionary decision requires fact-based determinations, a district court abuses its discretion when the decision is based on factual determinations unsupported by the evidence.").

*Pulley* is distinguishable from Powell's case because Powell's abuse of M.L. was demonstrated by evidence presented to the sentencing court under oath and subject to challenge. In other words, it was presented as evidence. And had Powell's case gone to trial, this testimony already had been determined to be admissible in a pretrial ruling. See K.S.A. 2017 Supp. 60-455(d) (providing defendant's other acts of sexual misconduct are admissible and may be considered for their bearing on any matter to which relevant and probative).

In addition to fitting within the facts-of-the-case mold, the prior crimes evidence was relevant to whether Powell proved his claimed mitigating circumstances, which included his lack of criminal history and the likelihood he would reoffend. Barnett even agreed there was clinical significance in the difference between M.L.'s allegations and over-the-clothes fondling. In *Ashbaugh*, a Court of Appeals panel addressed a defendant's argument that information cited in opposition to departure "went beyond the facts of the case and should not have been considered." *Ashbaugh*, 2017 WL 5180845, at *3. The panel's test—admittedly a case-by-case approach—turned on whether the unfavorable information related to the facts advanced in support of departure. The panel held it was permissible for the State to rebut defendant's arguments favoring departure "by noting incongruities and contradictions" in an evaluation on which defendant relied and through victim impact statements "to rebut . . . implications that [defendant's] family relationships could be reestablished if he were to be granted a departure sentence." 2017 WL 5180845, at *3.

27

The panel reasoned,

> "The evidence and arguments by the State would seem to clearly fall within the
> realm of information which reasonably might bear on the proper sentence for this
> particular defendant by filling the 'vacuum' potentially created had Ashbaugh's arguments
> gone unrebutted. Under these circumstances, a reasoned rebuttal does not rise to the level
> of an 'aggravating circumstance.'" 2017 WL 5180845, at *3.

We agree with this view of the evidence's relationship to a particular mitigation case. Moreover, whether a mitigating circumstance exists is a fact question. See *Jolly*, 301 Kan. at 326-331 (holding substantial competent evidence supported district court's finding that there were three mitigating circumstances supporting departure: defendant did not have criminal history, took responsibility for crime, and was not risk to community). Applying this principle to Powell's case, the prior crimes evidence was relevant to the persuasiveness of Barnett's opinion that Powell was unlikely to reoffend. Even more pointedly, M.L.'s testimony contradicted Powell's claim based on his lack of prior convictions that he had no history of prior criminal conduct.

Finally, this evidence was admitted solely on the departure issue and Powell failed to object to it. Under the contemporaneous objection rule,

> "A verdict or finding shall not be set aside, nor shall the judgment or decision
> based thereon be reversed, by reason of the erroneous admission of evidence unless there
> appears of record objection to the evidence timely interposed and so stated as to make
> clear the specific ground of objection." K.S.A. 60-404.

"[E]videntiary claims—including questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." *State v. King*, 288 Kan. 333, 349,

204 P.3d 585 (2009). Powell did not object, so he cannot now challenge the district court's ruling. See *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, Syl. ¶ 6, 159 P.3d 1035 (2007) ("The trial court cannot be accused of abusing its discretion in the admission of evidence when the complaining party failed to object and thereby give the trial court an opportunity to exercise its discretion on the matter.").

In summary, the record does not establish the district court abused its discretion by improperly weighing aggravating and mitigating circumstances. Unlike the district court in *McCormick*, the district court in Powell's case did not expressly refer to aggravating circumstances. The evidence adduced at sentencing was a fact of the case material to whether there were substantial and compelling reasons to depart, relevant to whether Powell proved his mitigating factors, and introduced without objection for the court's use in ruling on the motion.

CONCLUSION

Because the record does not demonstrate the district court based its ruling on an error of law by applying an incorrect legal framework or by considering improper facts, we hold Powell failed to show the district court abused its discretion. The panel majority erred by vacating the sentence. We hold further that district courts considering a departure motion need not affirmatively state they are not weighing aggravating and mitigating circumstances. Language in our caselaw contrary to today's holding is no longer sound.

We reverse the panel majority's decision. We affirm Powell's sentence.

29

\* \* \*

BEIER, J., concurring:  I concur in the result reached by the majority today and in most of its expressed rationale.

I write separately only to distance myself from its statements that how a district judge labels or characterizes evidence or the fact it has been admitted to prove is of no moment. Such statements are, at best, overbroad, and at worst, wrong. They are also unnecessary to reach the correct outcome and promise more, rather than less, confusion in the district courts.

The words a district judge uses to describe what he or she is deciding and why matter. Indeed, they are often all an appellate court has to go on when determining whether the judge adhered to the law. Appellate judges do not sit to determine what a lower court judge must have meant to say. They sit to determine what he or she did say and whether the words used demonstrate an error under the applicable standard of appellate review.

Because I see no abuse of discretion in what the district judge did say here—with or without the majority's criticism and clarification of *State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015)—I agree that the Court of Appeals decision must be reversed and the district court judgment affirmed.

NUSS, C.J., and JOHNSON, J., join the foregoing concurring opinion.