NOT DESIGNATED FOR PUBLICATION

No. 120,047

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KHALIL SHAKOR WARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed December 20, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and POWELL, JJ.

PER CURIAM: This is Khalil Shakor Ward's direct appeal of his convictions for possession of a firearm as a felon and possession of marijuana. He claims three errors. First, by denying his request for a continuance of his preliminary hearing, the trial court unconstitutionally denied him his right to counsel of his choice. Second, the police illegally seized the gun in his car and it should not have been admitted into evidence against him. Third, the prosecutor erred in closing statements by misstating the law.

1

The State argues that there are no trial errors and Ward's convictions must be affirmed. In the State's view, it was reasonable for the court to deny Ward's fourth request to continue his preliminary hearing. And the police, after smelling the odor of marijuana coming from Ward's person, had good cause to search his car for marijuana and the gun was discovered during that search. Finally, when considered in context, the prosecutor's statements are not misstatements of the law.

The State is correct on all three points and we affirm.

*The police noticed a cracked windshield.*

One evening in June 2017, two Wichita officers stopped the car Ward was driving because it appeared that its windshield was cracked. Both officers smelled an odor of marijuana coming from Ward's car. They asked him to step out of the car. He did so. Then, while one officer remained with Ward, the other officer searched Ward's car, looking for marijuana. The officer found no marijuana but did discover a handgun under the driver's seat. A record check of the gun revealed that it was reported stolen. The officers arrested Ward for possession of a stolen gun. After his arrest, the officers searched Ward's person and discovered a burnt marijuana cigarette in his possession.

Because Ward was a felon, the State charged him with one count of criminal possession of a firearm. The State also charged him with possession of marijuana and driving with an obstructed windshield.

The jury acquitted Ward of driving with an obstructed windshield, but it found him guilty of criminal possession of a handgun and possession of marijuana. The court imposed a suspended 10-month prison sentence.

*Ward asks to continue his preliminary hearing.*

Ward claims that the trial court improperly denied his request for a continuance of his preliminary hearing because that denial effectively denied him his right to counsel of his choice. He argues this denial is a structural error requiring reversal of his convictions. The State does not address Ward's claim of a structural error but argues the trial court did not abuse its discretion in denying his request for a continuance.

The record reveals several continuances of this hearing were granted. Ward's first court appearance was in June 2017. At that time, his preliminary hearing was set for July 5. Ward filed a financial affidavit declaring he was unemployed and had no assets, and he requested that an attorney be appointed to represent him. The trial court appointed a public defender to represent him.

After that, Ward's two requests for continuances of the preliminary hearing were granted without a record taken. When the parties ultimately met for Ward's preliminary hearing in August 2017, it is clear from the record on appeal that the trial court expected Ward to waive his right to a preliminary hearing. But Ward told the court that he did want one. The court then set the matter over for a preliminary hearing. This hearing is the focus of Ward's complaint.

At the preliminary hearing two weeks later—about three months after Ward's arrest—Ward's public defender told the court, "I just spoke to my client and he is asking for a continuance on this matter so that he can hire an attorney." The State objected because Ward had called for this hearing, the State's witnesses were present, and it was ready to proceed.

The court asked for details. Ward told the court that he was comfortable with his representation until "last time I was here [August 30]," at which time he asked his

3

attorney to ask something about "what happened," but his attorney said "she doesn't have to or she doesn't need to." Unpersuaded, the court denied Ward's request for a continuance, finding that "plenty of time" had passed for him to hire a lawyer; that a preliminary hearing means the State is held to a minimal threshold; and that his appointed attorney could handle the preliminary hearing "just as ably as any lawyer you would hire." The trial court also told Ward that he was "always free" to hire an attorney. Ward responded, "Oh, okay. . . . That's fine. That's fine then. That's fine." With this consent, the court heard the evidence.

After the preliminary hearing, Ward was bound over for trial. He made no further requests to secure his own counsel and did not bring up the matter again. Ward continued with his appointed public defender until February 2018, when a different public defender was assigned to his case. This public defender represented Ward at his trial.

To us, Ward argues this is structural error. The State suggests that it was reasonable for the court to deny the continuance and contends we should use an abuse of discretion standard of review.

The Sixth Amendment to the United States Constitution provides that a defendant must be afforded "a reasonable opportunity to secure counsel of his or her choosing." *State v. Anthony*, 257 Kan. 1003, 1018, 898 P.2d 1109 (1995). Both sides cite *Anthony* as authority supporting their positions. When a criminal defendant's constitutional right to secure counsel of his or her choice conflicts with a trial court's discretionary power to deny continuances, an appellate court must balance several case-specific factors to determine whether the trial court's conduct was fair and reasonable. 257 Kan. at 1019.

4

*Anthony* lists the factors that a court must consider.

- Would a continuance be an inconvenience to the court, counsel, parties, or witnesses?
- Have other continuances been granted?
- Are there legitimate reasons for the delay?
- Is the delay due to the defendant?
- Does denial of the continuance prejudice the defendant? 257 Kan. at 1019.

Answering these questions lead us to conclude that the denial of Ward's continuance was not unreasonable and did not constitute structural error. The State was ready to proceed with the preliminary hearing. Its witnesses were ready to testify. The matter had been delayed before at Ward's request, and a busy trial court needs to keep cases moving. Ward was present and represented by counsel. Ward did not ask for a continuance so he could secure his own witnesses or obtain some evidence to present at the preliminary hearing. And we can see no loss to Ward here. He still had the opportunity to hire his own attorney after the preliminary hearing.

When we balance these factors, as *Anthony* requires, we see no prejudice. Ward filed a poverty affidavit and he had appointed counsel. He never told the court that he could obtain the money to hire his own lawyer. He has not shown us any prejudice by proceeding with a preliminary hearing. If Ward wanted to hire his own attorney, he could have done so after the preliminary hearing. There was ample time after the preliminary hearing before the jury trial for Ward to hire counsel. The Supreme Court has cautioned us that a defendant may not manipulate the right to secure counsel of his or her choosing "to impede the efficient administration of justice." *Anthony*, 257 Kan. at 1019.

We hold there is no structural error here.

*The contemporaneous objection rule applies here.*

Claiming an illegal search, Ward moved before trial to suppress the gun found in his car. In his view, the police had no probable cause to stop or search the car. The court denied the motion. Then, at trial, Ward did not object when the officer testified about the gun or that it had been reported stolen. Ward did, at the end of the State's case, vaguely object to any adverse rulings "whether it be objections, motions, or otherwise." Ward claims this preserved this issue for appellate review. This unspecific, generic objection did not preserve this issue. The law requires more.

Under K.S.A. 60-404, an appellate court is generally precluded from reviewing an evidentiary challenge unless there is a timely and specific objection made on the record. *State v. Powell*, 308 Kan. 895, 917, 425 P.3d 309 (2018). A party cannot object to the introduction of evidence on one ground at trial and assert another ground on appeal. *State v. Reed*, 300 Kan. 494, 505-06, 332 P.3d 172 (2014).

Ward made no specific objection to the admission of this evidence, unless we consider the vague conclusory general objection at the end of the State's case. No court has ever held such an objection to be sufficient to preserve an issue for appeal, and neither will we.

The rationale for the contemporaneous objection rule is that a trial court is not in a position to fully consider whether to admit the evidence until it is offered at trial because the "'materiality of the proposed evidence may not become actually apparent until other evidence has been admitted.'" *State v. Jones*, 267 Kan. 627, 638, 984 P.2d 132 (1999). This means that a pretrial ruling on a motion to suppress does not preserve the issue for appeal.

6

We take the Supreme Court to mean what it says. In *State v. Sean*, 306 Kan. 963, 973, 399 P.3d 168 (2017), our Supreme Court could not be more clear when it stated: "[W]e take this opportunity to reiterate an important principle. When a party moves to suppress evidence and the court denies the motion, the party must timely and specifically renew this objection when the opposing party moves to admit the evidence during trial."

Since Ward made no contemporaneous specific objection to the admission of this evidence, he has failed to preserve the issue for appeal. His vague objection is insufficient. We will not consider the matter.

*We find no prosecutor error.*

Wade argues the State committed prosecutorial error when it twice misstated the law. Ward complains about two statements—one about reasonable doubt and one about possession of contraband:

- "[I]f you're not left with any reasonable doubt as to the State's claims, you must return guilty verdicts in this case."
- "[A]ny item within that [car] is essentially within the legal definition of possession as far as the defendant is concerned. Any item in that car was within his possession."

For the first error, Ward relies on *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014), to support his contention that the prosecutor misstated the law. He claims that *Smith-Parker* suggests that an instruction that tells the jury it must convict is improper. Ward's reliance on *Smith-Parker* is misplaced. In that case, the court focused on a jury instruction read by the court. It used the term "must" and "went too far" in essentially forbidding the jury from exercising its power of nullification. 301 Kan. at 164. Unlike *Smith-Parker,* the trial court here properly instructed the jurors on the burden of

proof, informing them they should—rather than "must"—convict, if they determined the State proved its case.

Ward cites no precedent extending the holding in *Smith-Parker* concerning jury instructions to statements by prosecutors; nor does he cite any authority in support of his argument that the holding *should be* extended to prosecutors. But recently, in *State v. Pruitt*, 310 Kan. ___, No. 118,448, 2019 WL 6646441, at *10 (Kan. 2019), our Supreme Court noted that while the ruling in *Smith-Parker* applied to judges instructing juries, it held that a prosecutor's closing argument is fundamentally different. The court held that it was not prosecutor error for the prosecutor to say to the jury that it "must" convict if it was convinced beyond a reasonable doubt the State had proved all the elements of first-degree murder. 2019 WL 6646441, at *10.

Because this jury was properly instructed, we see no reversible error arising from this brief comment by the prosecutor. We move to the second comment.

Next, Ward claims the prosecution misstated the law when it told the jury, "[A]ny item within that [car] is essentially within the legal definition of possession as far as the defendant is concerned. Any item in that car was within his possession." Without more information, considered in isolation, this statement could mislead a jury about the law. But when evaluating a prosecutor's closing arguments, context matters. Appellate courts consider a prosecutor's comments in the context in which they were made rather than in isolation. *State v. Thomas*, 307 Kan. 733, 744, 415 P.3d 430 (2018). The context persuades us that it is not misleading.

The prosecutor told the jury several times that the State had to prove Ward knew the gun was in the car in order to prove he possessed it. These excerpts from the prosecutor's closing argument provide a better picture of the significance of the comment.

The prosecutor began by referring to the legal concept of possession:

"I want to talk about possession real quick. You have it defined in two of the three charged offenses, which is the possession of the handgun and the possession of the marijuana. I think it bears a little discussion to flush that out. The judge just told you and you will see for yourself in your packets, that it is joint or exclusive control and that is with knowledge and intent to control."

Next, the prosecutor referred to several specific facts about the gun and where it was found:

"Now, let's talk about some of the facts. Mr. Ward, he is the only occupant in the Cavalier. There is no evidence to dispute that. The gun, which was located directly under his seat, that 40-caliber Sig Sauer, just inches from his grasp directly under him. It wasn't jammed far in there. No intent to conceal. It was directly under the seat. In fact, you can see in a couple of the State's exhibits and in the video, that it is slightly poking out from behind that seat. So, it isn't completely obscured in a place that isn't easily within the defendant's control."

After that, the prosecutor made some general statements about possession and referred to Ward's admission of possession of the gun:

"In fact, any item within that Cavalier is essentially within the legal definition of possession as far as the defendant is concerned. Any item in that car was within his possession. And that is true with the firearm, as well.

"Now, if that isn't enough, then the defendant admitted to possessing the gun on the stand both to his own counsel and to Ms. Laudermilk. So that element really isn't in dispute. The defendant was possessing that firearm."

This context shows the second comment was not as offensive as Ward argues. During the closing, the prosecutor, more than once, acknowledged that to prove

9

possession, the State must first prove that Ward knew the gun was in the car. The context convinces us the comment is not reversible error.

The prosecutor also mentioned what Ward told the police. Ward initially told the officer that he bought the gun at a gun show. He later said that he bought it from a friend who bought it at a gun show. From such statements, a reasonable jury could infer that Ward knew about the gun and that it was under his driver's seat.

Affirmed.